UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| BRENDA GAIL WARD | * | CIVIL ACTION NO.  10-0285 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MICHAEL J. ASTRUE,<br>COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Brenda Gail Ward filed the instant application for Title II Disability Insurance Benefits on September 26, 2007.  (Tr. 71-73).  She alleged disability since October 19, 2006, because of low back pain, fibromyalgia, arthritis, left arm problems, difficulty gripping, and severe pain.  (Tr. 89, 93).  The claim was denied at the initial stage of the administrative process.  (Tr. 38-43). Thereafter, Ward requested and received an October 8, 2008, hearing before an Administrative Law Judge ("ALJ").  (Tr. 19-37).  However, in a February 4, 2009, written decision, the ALJ determined that Ward was not disabled under the Act, finding at Step Four of the sequential evaluation process that she was able to return to her past relevant work as a mortgage clerk.  (Tr. 9-18).  Ward appealed the adverse decision to the Appeals Council.  On January 6, 2010,

however, the Appeals Council denied Ward's request for review; thus the ALJ's decision became

the final decision of the Commissioner.  (Tr. 1-3).

On February 22, 2010, Ward sought review before this court.  She alleges the following

errors,

> (1)    the ALJ's determination that plaintiff can perform the exertional demands of light
>        work is not supported by substantial evidence;
>
> (2)    the ALJ committed reversible error by rejecting the opinion of Ward's treating
>        physician; and
>
> (3)    the Appeals Council committed reversible error by failing to remand the matter to
>        the ALJ for consideration of newly submitted evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa*

*v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported

by substantial evidence when the decision is reached by applying improper legal standards.

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

*Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a

preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's

determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court

may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can

still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

<u>**Analysis**</u>

## I.     **Steps One, Two, and Three**

The ALJ determined at Step One of the sequential evaluation process that Ward had not engaged in substantial gainful activity during the relevant period. (Tr. 14). At Step Two, he found that she suffers severe impairments of bilateral degenerative arthritis of the hands; degenerative changes of the lumbar spine; status post surgeries; fibromyalgia; and left shoulder pain status post surgery. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 14-15).

## II.     **Residual Functional Capacity**

The ALJ next determined that Ward retains the residual functional capacity to perform

light work,[1] reduced by the ability to occasionally climb, balance, bend, stoop, kneel, crouch, and

crawl, plus the ability to frequently (as distinguished from constantly) finger, bilaterally.  (Tr.

15).  She also must avoid concentrated exposure to extreme cold and vibration.  *Id*.  In so

deciding, the ALJ discounted Ward's testimony and the opinion of her treating physician, Kerry

Anders, M.D.  Instead, he credited the findings of the state agency physician and the consultative

examiner, Clinton McAlister, M.D.

        a)        Summary of Relevant Medical Evidence

       For the past several years, plaintiff has been treated by her primary care physician, Dr.

Anders.  *See e.g.*, Tr. 235-247.  On October 3, 2008, Dr. Anders completed a medical source

statement, wherein he remarked that Ward suffers from low back pain, fibromyalgia, and

osteoarthritis.  (Tr. 234).  Anders indicated that Ward can work for two hours per day, stand and

sit for 30 minutes at a time, lift up to five pounds, and occasionally manipulate her hands.  *Id*.

She frequently needs to elevate her legs during an eight hour day.  *Id*.  He further indicated that

her pain was moderate (rather than mild, severe, or extreme).  *Id*.[2]

---

[1]  Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even though the
> weight lifted may be very little, a job is in this category when it
> requires a good deal of walking or standing, or when it involves
> sitting most of the time with some pushing and pulling of arm or
> leg controls.  To be considered capable of performing a full or wide
> range of light work, you must have the ability to do substantially
> all of these activities.  If someone can do light work, we determine
> that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[2]  Obviously, if credited, the limitations recognized by Dr. Anders would preclude all
work.

On May 7, 2007, Ward saw Scott McClelland, M.D., for left shoulder pain. (Tr. 165). McClelland noted that he had seen her over three years earlier for left shoulder impingement. *Id*. However, Ward had lived with her symptoms, including *some discomfort* most of the time, and an occasional flare up of symptoms several times per week. *Id*. Shoulder level or higher activities worsened her symptoms. *Id*. Nonetheless, she exhibited a full range of motion. *Id*.

On July 10, 2007, Ward underwent arthroscopic left shoulder surgery to repair her left shoulder impingement and calcific tendonitis. (Tr. 145-147). By August 7, 2007, Ward's shoulder was "doing fantastic." (Tr. 162). McClelland noted that she essentially had "no pain," and was pleased with the results. *Id*. She exhibited a normal range of motion, and was to continue her "activity ad lib other than to avoid repetitive activity at shoulder level and higher for the *next month*." *Id*. (emphasis added).[3]

On November 5, 2007, orthopedic surgeon, Clinton McAlister, M.D., examined Ward at the request of Disability Determination Services. (Tr. 216-220). Ward reported that she had suffered from arthritis in her hands for the last few years. *Id*. She added that she had recently been diagnosed with fibromyaglia. *Id*. She stated that she underwent back surgery in the '90s and again in November 2004. *Id*. She reported no problems with her hips, knees, or ankles, but experienced some radiation down her legs. *Id*. She characterized the pain in her hands as an eight on a ten point scale. *Id*. Her back pain was a nine out of ten. *Id*. She stated that her pain was mostly in her lower back, with occasional paresthesias down her legs. *Id*. She reported difficulty walking, sitting, or standing for any period of time. *Id*. She said that she could only do light housework. *Id*.

Upon examination, Ward exhibited a full range of motion in her shoulders, elbows, and

---

[3] He essentially released her from care.

wrists, with 5/5 strength and good stability.  *Id.*  She had some enlargement and tenderness of her

finger joints, bilaterally.  *Id.*  However, she was capable of fine manipulation, opposition

gripping, and grasping bilaterally.  *Id.*  She had 5/5 grip strength and 5/5 pinch strength

bilaterally.  *Id.*  Upper extremity sensory examination revealed no deficit.  *Id.*  Straight leg raise

was positive at 85 degrees.  *Id.*  However, straight leg raise, while sitting, was negative,

bilaterally.  *Id.*  She exhibited a full range of motion of the hips, knees, and ankles with 5/5

strength and good stability.  *Id.*  X-rays of the bilateral hands revealed degenerative changes at

the DIP joints in the fingers, bilaterally.  *Id*.  There also was some mild carpometacarpal joint

arthritis at the base of the thumbs, bilaterally.  *Id.*

     McAlister diagnosed degenerative arthritis of the DIP joints, bilaterally; back fusion L3-4,

L4-5 with degnerative changes at L2-3, and L5-S1, fibromyalgia, and post-left shoulder surgery

for impingement.  *Id.*  McAlister concluded that Ward had definite limitations in her back and

definite arthritic changes in her hands.  *Id.*  However, her professed back and hand pain appeared

disproportionate to the objective findings.  *Id.*  McAlister opined that Ward could "perform at a

sedentary activity level range with occasional lifting of 20 pounds and frequent lifting of 10

pounds.  There should be limited fine repetitive motion of the hands with decreased gripping and

grasping.  There should also be limited walking, standing, and sitting with frequent changes of

position."  *Id.*  McAlister reiterated that Ward's subjective complaints exceeded the objective

findings, especially related to her hands.  *Id.*   He further found that she can effectively oppose

thumb to her finger tips and can manipulate small objects.  (Tr. 224).  She exhibited 5/5 grip and

pinch strength.  *Id.*

     After McAlister issued the results of his examination, a non-examining agency physician,

Gerald Dzurik, M.D., reviewed the file and recommended a "light" residual functional capacity

assessment, with frequent, but not "constant" fingering.  (Tr. 225, *see also* Tr. 214 (Dzurik

ordered the orthopedic examination, with back and hand x-rays)).  Don Meade, a disability

examiner, then completed a physical residual functional capacity assessment form, indicating that

Ward was capable of light work, with occasional postural activities, but fingering was limited to

frequent, rather than constant.  (Tr. 226-233).  He also indicated that she should avoid

concentrated exposure to extreme cold, fumes, odors, dusts, etc.  *Id*.

      b)      <u>Discussion</u>

Plaintiff takes issue with the ALJ's residual functional capacity assessment.  She argues

that the ALJ erred when he declined to adopt the limitations assigned by her treating physician,

Dr. Anders.  The court recognizes that

> "ordinarily the opinions, diagnoses, and medical evidence of a
> treating physician who is familiar with the claimant's injuries,
> treatments, and responses should be accorded considerable weight
> in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th
> Cir.1985). The treating physician's opinions, however, are far from
> conclusive. "[T]he ALJ has the sole responsibility for determining
> the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901,
> 905 (5th Cir.1990).
>
> Accordingly, when good cause is shown, less weight, little weight,
> or even no weight may be given to the physician's testimony. The
> good cause exceptions we have recognized include disregarding
> statements that are brief and conclusory, not supported by
> medically acceptable clinical laboratory diagnostic techniques, or
> otherwise unsupported by the evidence. *Scott*, 770 F.2d at 485. In
> sum, the ALJ "is entitled to determine the credibility of medical
> experts as well as lay witnesses and weigh their opinions
> accordingly." Id.; see also 20 C.F.R. § 404.1527(c)(2) ("If any of
> the evidence in your case record, including any medical opinion(s),
> is inconsistent with other evidence or is internally inconsistent, we
> will weigh all the other evidence and see whether we can decide
> whether you are disabled based on the evidence we have.").

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5ᵗʰ Cir. 1994).

Here, the ALJ acknowledged Dr. Anders' treating relationship with plaintiff, but remarked that his "highly restrictive assessment was quite conclusory, providing very little explanation of the evidence relied on in forming that opinion, and was not fully supported by the treatment records and other evidence." (Tr. 17).  Indeed, according to Dr. Anders' office notes for each of Ward's monthly visits from at least October 2007 through October 2008, she was negative for musculoskeletal pain, swelling, deformity or arthritis.  (Tr. 235-247).  At a minimum, these treatment notes are not consistent with Anders' medical source statement wherein he characterized her pain as "moderate."  *See* Tr. 234.  Moreover, even if Dr. Anders inadvertently marked Ward's chart as "negative" for musculoskeletal pain, this oversight demonstrates repeated inattention to detail, that undermines his credibility.

Plaintiff further argues that the ALJ should have analyzed Dr. Anders' findings in light of the relevant factors set forth in 20 C.F.R. § 404.1527.  *See*, *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).  However, an ALJ need not consider each of the § 404.1527(d) factors when, as here "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another."  *Ward v. Barnhart*, 192 Fed. Appx. 305, 308, 2006 WL 2167675 (5th Cir. 08/02/2006) (unpubl.) (quoting *Walker v. Barnhart*, 158 Fed. Appx. 534 (5th Cir. 12/9/2005); *see also*, *Bullock v. Astrue*, 2007 WL 4180549 (5th Cir. 11/27/2007) (unpubl.).

As in *Ward*, the instant ALJ discussed the competing evidence that conflicted with Dr. Anders' opinion.  *Ward, supra*.  The ALJ's decision to place little weight, or to "effectively [reject]" the limitation(s) recognized by Dr. Anders is supported by substantial evidence.  *Id*.; *see also, Nugent v. Astrue*, 2008 WL 2073891 (5th Cir. May 16, 2008) (ALJ entitled to discount treating physician's conclusory statement because it contradicted earlier treatment notes,

objective medical findings, and other examining physicians' opinions).

Plaintiff further contends that the ALJ failed to fully and fairly develop the record by not re-contacting Dr. Anders in an effort to resolve his concerns.  The regulations provide that the Commissioner will seek additional evidence or clarification from a treating source when:  1) the report from the source contains a conflict or ambiguity that needs to be resolved; 2) the report does not contain all of the necessary information; or 3) the report does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1512(e).

Here, it is manifest that the ALJ discounted Dr. Anders' assessment because it was not supported by objective medical findings and other medical evidence.  This rationale does not appear to be one of the three grounds that would require the ALJ to re-contact the physician.  But, to the extent that the ALJ was obliged to re-contact Dr. Anders, the court observes that an ALJ's failure to adequately develop the record does not automatically compel reversal.  *Hyde v. Astrue*, Docket No. 07-30748 (5th Cir. May 12, 2008) (unpubl.) (citing *Kane v. Heckler*, 731 F.2d 1216 (5th Cir. 1984)).  To obtain reversal because of an ALJ's failure to adequately develop the record, the claimant must also demonstrate resulting prejudice.  *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996).  "To establish prejudice, a claimant must show that [she] could and would have adduced evidence that might have altered the result."  *Id.*  (internal quotation marks omitted).  Mere speculation that additional evidence might have made a difference does not suffice.  *Hyde, supra*.  Plaintiff has not made that showing here.

Ultimately, the ALJ premised his residual functional capacity assessment upon the limitations recognized by the non-examining agency physician and the consultative orthopedist.  Plaintiff argues that the ALJ impermissibly credited the physical residual functional capacity assessment form completed by Don Meade because Meade was a disability examiner, rather than

a physician.  However, plaintiff overlooks that the agency physician, Gerald Dzurik, M.D.,

actually reviewed the file and recommended a "light" residual functional capacity assessment,

with frequent, but not "constant" fingering.  (Tr. 225).  Meade merely incorporated this

assessment into the agency form and threw in some environmental restrictions for good

measure.[4]  Thus, even though a physician did not sign the agency residual functional capacity

assessment form, any error was harmless.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)

(procedural perfection in administrative proceedings is not required);  *Audler v. Astrue*, 501 F.3d

446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's

substantial rights).

　　　　Another, more substantial, question is whether the assessment of Dr. Dzurik, a non-

examining physician, is consistent with the findings of the examining, consultative physician, Dr.

McAlister.[5]  The potential conflict arises because McAlister opined that Ward was capable of

performing at the "sedentary activity level range,"[6]  but with the ability to occasionally lift 20

---

[4]  However, the need to avoid concentrated exposure to extreme heat, humidity or air pollutants, and work at heights or around dangerous moving machinery, does not significantly impact a claimant's work capacity.  *Guillory v. Barnhart*, Civil Action Number 03-0775 (W.D. La. 3/12/04 Report & Recommendation; 4/22/04 Judgment) (citing SSR 85-15), *affirmed*, 129 Fed. Appx. 873 (Mar. 17, 2005) (unpubl.).

[5]  "An ALJ may properly rely on a non-examining physician's assessment when ... those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)).

[6]　　Sedentary work entails:
　　　　. . . lifting no more than 10 pounds at a time and occasionally lifting
　　　　or carrying articles like docket files, ledgers, and small tools.
　　　　Although a sedentary job is defined as one which involves sitting, a
　　　　certain amount of walking and standing is often necessary in
　　　　carrying out job duties.  Jobs are sedentary if walking and standing
　　　　are required occasionally and other sedentary criteria are met.

pounds and frequently lift 10 pounds – a lifting restriction consistent with light work. McAlister

also recognized "limited fine repetitive motion of the hands with decreased gripping and

grasping" and assigned, in effect, the need for a sit-stand option.

Nevertheless, to the extent that the ALJ erred by failing to conform his residual functional

capacity assessment to the limitations recognized by Dr. McAlister, (i.e. the ability to sit, stand,

and walk at the sedentary exertional level, with a sit/stand option; the ability to lift and carry at

the light exertional level; and the ability to "frequently" finger),[7] any error was harmless because

the vocational expert opined that Ward's past relevant work was performed at the sedentary level

in the national economy, and the work was not impacted by the frequent fingering limitation or

the need for a sit/stand option. *See* Tr. 24, 34-36; *see Mays, supra*. Further, even if Ward were

limited to sedentary work, with a sit/stand option, and the ability to only *occasionally*[8] write or

handle small objects, these limitations are not incompatible with the demands of her past relevant

work, at least as she described her work on one occasion. *See* Tr. 104.[9] Of course, past relevant

work is defined as "the actual demands of past work or 'the functional demands ... of the

occupation as generally required by employers throughout the national economy.'" *Jones v.

Bowen*, 829 F.2d 524, 527 (5th Cir. 1987).

---

20 C.F.R. 404.1567(a).

[7] McAlister does not quantify the extent of Ward's limitations on her ability to manipulate fine objects. After reviewing the record, Dzurik restricted Ward to "frequent" fingering (i.e. from 1/3 to 2/3 of the time). This limitation is not inconsistent with McAlister's findings that Ward can effectively oppose thumb to her finger tips and can manipulate small objects. (Tr. 224). She also exhibited 5/5 grip and pinch strength. *Id.*

[8] "Occasionally" means from very little up to one-third of the time. *See* SSR 83-14.

[9] Ward's description of the duties associated with her past relevant work varied over time. *Compare* Tr. 80-81, 31-32.

Finally, plaintiff argues that the Appeals Council committed reversible error when it failed to address new evidence that she submitted in the first instance to the review board.[10] However, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 2006 WL 166284 (5th Cir. 1/10/2006) (unpubl.) ("*Higginbotham II*").[11] Rather, the evidence constitutes part of the instant record and provides a basis for remand so long as it is new, material and related to the period before the ALJ's decision. *See Higginbotham, supra*; 20 C.F.R. § 404.970(b).[12]

Here, however, there is no indication that the new evidence reflected plaintiff's condition as of the *hearing date* or at the time of the ALJ's decision, rather than a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180,

---

[10] The evidence consisted of a September 18, 2009, x-ray of the bilateral hands that indicated moderate to marked osteoarthritis in the DIP joints of the right hand and marked osteoarthritis in the DIP joints in the left. (Tr. 271). Based upon this x-ray, Dr. Anders wrote a note on October 9, 2009, opining that Ward suffered marked osteoarthritis involving the DIP joints in her left and right hands. (Tr. 273).

[11] Despite the presence of new evidence in *Higginbotham*, the panel on subsequent appeal upheld the district court's decision to affirm the Commissioner's denial of benefits. *Higginbotham II*. The panel itself discounted a diagnosis of disability by claimant's treating physician as conclusory and unsupported. *Id*.

[12] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

183 (5th Cir.1985) (internal quotation marks omitted)).[13]  Here, the agency ordered x-rays of

plaintiff's hands in 2007, which McAlister reviewed as part of his examination and assessment.

(Tr. 214, 219).  Moreover, from October 2007 through October 2008, Dr. Anders indicated that

Ward was "negative" for musculoskeletal pain and arthritis.  Thus, the 2009 x-rays merely reflect

a deterioration of Ward's arthritis, which she conceded was worsening.[14]

## IV.     Step Four

At Step Four of the sequential evaluation process, the ALJ employed a vocational expert

to find that Ward was able to return to her past relevant work as a mortgage clerk, both as she

performed the job, and as it is generally performed in the national economy.  (Tr. 17).  Other than

implicating the ALJ's residual functional capacity assessment, plaintiff does not raise any

challenges specific to the ALJ's Step Four analysis.

**Conclusion**

For the foregoing reasons, the undersigned finds that the Commissioner's determination

that Ward was not disabled under the Social Security Act, is supported by substantial evidence

and remains free of legal error.[15]  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits

---

[13]  Fifth Circuit case law suggests that the relevant period for a disability claim extends until the date of the administrative hearing.  *Hammond v. Barnhart*, 132 Fed. Appx. (5th Cir. May 17, 2005) (unpubl.); *Haywood*, 888 F.2d at 1472; *Johnson*, 767 F.2d at 183.  Medical evidence that post-dates a hearing may be considered, provided that it addresses the severity of the claimant's pre-hearing condition.  *Hammond, supra*.

[14]  The new evidence may support a subsequent application for disability for the period after the ALJ's decision.

[15]   That is not to say that the ALJ's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 28th day of January 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE